## Case No. 4,545.

### The EUPHRASIA.

BETHEL et al. v. The EUPHRASIA.

[4 Adm. Rec. 136.]

District Court, S. D. Florida. May 2, 1848.

S. R. Mallory, for libellants.
Wm. R. Hackley, for respondent.

MARVIN, District Judge. The American ship Euphrasia (Simpson, master), bound on a voyage from New Orleans to Liverpool, laden with cotton, about one o'clock on the night of the 24th of April last, ran ashore on the inside of Pickle's reef, a part of Carrysfort reef, on this coast. The ship was going at the rate of about six knots an hour when she struck, and she was driven considerably out of the water. Soon after the ship struck the reef she was discovered by Captains Bethel, Roberts, Stickney, and Gordon, who lay with their respective wrecking vessels (sloops) at Key Tavernier, the harbor most used by the wreckers on that part of the coast. They immediately got under way, and proceeding to the ship, offered their assistance to the master, who at the time declined it, intending to use his own efforts to get the ship off, and hoping for success at the return of the tide, about one o'clock in the day. The situation of the ship was not one of immense peril or pressing danger as long as the weather remained good and there was but a moderate sea. She lay in a bight of the reef considerably careened. She did not thump nor rise and fall with the sea. But she was surrounded on almost all sides by reefs and shoals, which however were not of sufficient extent and did not come near enough out of the water to protect the ship from the action of the sea if the weather became at all windy. At one o'clock in the day, it being high-water, and the ship appearing to be still hard aground, the master accepted the assistance of libellants to lighten and get off the ship. The libellants commenced to lighten the ship by transferring the cargo on board their vessels, and at the same time carried out and planted an anchor by which to heave the ship off. By one o'clock at night they had lightened the ship of 530 bales of cotton, and it being near high water, they commenced and continued for some time to heave upon the anchor, when the ship came off the reef and swung to her anchor. In the morning they got her under way, and, navigating her out from among the reefs which surrounded her through an intricate and difficult channel into the open sea, they arrived with her at this port on the 27th.

The ship appears to have been but little injured on the reef, and is considered in a fit condition to proceed on her voyage without repairs. The ship has been appraised at $12,-

000, the cotton at $34,470, making the aggregate value of the property saved $46.470.

Such are the principal facts in the case. Upon a careful consideration of these facts, it appears to me that this ship and cargo were in considerable peril of total loss while on the reef, and they have been saved from this peril mainly by the exertions of the salvors. It is true that the master of the ship retained the command and supervised, and directed as far as his knowledge of the reef would enable him the labors and efforts of the wreckers and the preservation of the ship and cargo are to some degree to be attributed to him. But in my opinion he could have accomplished but little towards saving the ship and cargo without more assistance than his crew could afford. He might and probably would if no other assistance had been at hand have carried out an anchor, and he might have thrown overboard a portion of his cargo to lighten his ship. And he might have succeeded in getting his ship afloat with the loss of a considerable portion of his cargo. And it is within the range of possibility that he might have succeeded in getting his ship to sea again. But when it is considered that the master was entirely ignorant of the extent, nature, and locality of the reefs and shoals around him and of the channel, and that he must consume much time in sounding to obtain the information necessary to enable him to act understandingly, that a heavy anchor was to be carried out, and the ship lightened of nearly one third of her cargo, and that after the ship had got afloat she had to be navigated for a considerable distance through a difficult channel, of which the master was entirely ignorant, and which it is evident from his own testimony he would not readily have discovered at all, he thinking it lay in an entirely different direction, where it is well known to pilots and the salvors there is no channel for a ship, that a slight increase in the wind or a change in its direction would have so much increased the sea upon the reefs as to have greatly endangered the ship, it does not appear to me probable that the captain would or could have extricated the ship from these difficulties and dangers without assistance. Whether the ship and cargo would have been lost under these circumstances had no assistance been employed cannot certainly be known.

In arriving at an opinion on such a point, it is the duty of the court to consider the well established facts in the case, and not permit itself to be too much influenced by the opinions of the witnesses. The opinions of parties or witnesses are of but little value unless well supported by facts and satisfactory reasons. In the present case the captain thinks he could have saved his ship and two thirds of his cargo by a jettison of the other third. On the other side, the salvors are equally confident that he could not have done so. Judging solely from the facts of the case, the situation of the vessel on the reef,

the locality and extent of the shoals, the blindness and intricacy of the channel (and there was but one) the time that must necessarily be consumed in finding out this channel and in heaving overboard cargo, the liability of the winds to vary and increase in force, from what they were at this season of the year, and the further fact, within the historical knowledge of the court, of the loss of several ships, on the same reef, within the last ten years, situated quite as favorably for their safety as this one, and it appears to me that a strong presumption arises that but for the efforts of the salvors, this ship and cargo would have been lost.

Taking it, then, as established by the facts of the case that this ship and cargo were in actual peril of total loss, the services of the salvors are greatly increased in value by the further fact that they have been saved by them without damage or injury to the ship and cargo. The ship was in actual peril, and was rescued from it in an unusually short period of time by the very active and persevering efforts of the salvors. Had they labored less diligently or less skilfully, the ship may not have been got off at the high-water she was; and had she been on the reef at the succeeding high-water, no person can say how much injury she may have sustained,—perhaps enough to require her discharge in this port, incurring thereby heavy charges of wharfage, storage, labor, and repairs, with considerable delay in again entering upon her voyage.

In such a case, then, where it is evident that the ship was in peril, the fact that she was rescued in a short period of time, and without material injury becomes a fact of positive merit, entitling the salvors to the very favorable consideration of the court. I have given in several cases, lately decided, wherein the ship had been lost and the cargo only saved, the one third of the property saved to the salvors. The amount of property saved in these different cases was about the same, and it would be difficult to distinguish them by any material difference except by the fact that in the cases referred to the ship was lost and in the present one saved. Ought 1 to give less than the one third in the present case? If so, upon what principle? If upon the principle that the loss of the ship makes it demonstrable that the cargo was in great peril, and was most certainly saved by the salvors, and no other proof of the peril of the cargo is or can be taken as satisfactory but the loss of the ship, do I not hold out to the wreckers on this coast a sure inducement, a strong motive, to suffer ships to be lost, as the only means by which they can satisfy the court that the cargo was in danger, and so increase their compensation by their own positive inertness, misconduct or bad faith, and by the destruction of ships on the reef? It appears to me that, upon sound principles of justice and policy, I am bound to decree the salvors

as large a compensation or larger in the present case than in cases where the ship has been lost and the cargo only saved.

Let it be generally understood among the wreckers, that their interest is most promoted in all cases by saving the ship and cargo, and but few ships will be lost upon this reef, that can possibly be saved. I think that the one third of the value of the ship and cargo should be decreed the salvors in the present case, or rather I shall decree the sum of $15,000, which is very nearly the one third. The ship's portion of the salvage is $3,873.50, the cotton's portion $10,481, and the lard's portion is $645.50. As the lard lies in the bottom of the ship, the salvage on it will be rendered to be paid by a sale of cotton. The master proposes to raise and pay the salvage and expenses on the ship in money.

It is ordered, adjudged, and decreed that the libellants in the present case are entitled to have and receive in full compensation for their services rendered to the ship Euphrasia and cargo the sum of $15,000, as the whole salvage, of which the ship's portion, $3,873.50, which said sum of $3,873.50 the marshal will receive from said master of said ship, together with the ship's portion of the costs and expenses of this suit, in full compensation for the salvage and expenses on said ship, and thereupon restore said ship to the master, for and on account of whom it may concern. That the clerk and marshal proceed to set off and assign to the salvors five hundred and forty bales of the cotton, in full compensation for their salvage in saving the same. That, after setting off the said 540 bales, the marshal proceed to advertise and sell the same, at public auction, and bring the proceeds into court, to be distributed among the salvors. That the marshal also proceed to advertise and sell so much of the residue of said cotton belonging to said cargo as will make the sum of $645.50; as the salvage on the lard, also sufficient to pay the cargo's proportion of the costs and expenses of this suit. That the expenses of the sales of the 540 bales assigned to the salvors be paid by them, and that, on executing this decree, he restore said cargo to the master of the ship, for and on account of whom it may concern.